IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-4051-05-CR-C-BCW |
| | ) | |
| WENDELL EUGENE WOODSON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant Wendell Eugene Woodson's Motion to Suppress Evidence and Statements. (Doc. 390). Defendant alleges that suppression of the "marijuana and all physical evidence allegedly seized from his vehicle and any statements attributed to the Defendant as a result of a 'traffic stop' which occurred on January 25, 2013" is required in this case because the defendant's Fourth, Fifth, and Fourteenth Amendment rights have been violated. The United States has filed suggestions in opposition of the motion. (Doc. 395). A hearing was held on September 27, 2016, and supplemental suggestions in support were filed by Defendant following the hearing. (Doc. 399).

## Background

Defendant has been charged in a 14 Count Indictment, in all counts, excluding Count 2, involving a conspiracy to Distribute and Possess with the Intent to Distribute Marijuana. (Doc. 1). In the instant motion to suppress, Defendant attempts to suppress marijuana that was discovered by officers with the St. Louis County Police Department, when Defendant's vehicle was stopped for exceeding the posted speed limit.

Richard Marieo Hunter, a co-defendant in the instant case, was identified as a significant marijuana customer of Jorge Alberto Cabada-Lopez, who was identified as a significant supplier of marijuana to the Kanas City and mid-Missouri area. During the investigation of this case, a Title III order was obtained, which authorized the interception of wire and electronic communications to and from Hunter's cellular telephone. From December 28, 2012 through March 27, 2013, interception and monitoring of phone calls and text messages occurred. During

this time, a number of phone calls and text messages established that Hunter and others were involved in the trafficking of marijuana.

Based on information obtained through the interception of Hunter's telephone, it was discovered that a large delivery of marijuana would occur at Hunter's house on January 24, 2013. At approximately 2:38 p.m., Cabada-Lopez called Hunter and told him to "open the door." Shortly thereafter, surveilling agents observed Hunter's garage door open and Hunter's white Chevrolet Malibu backed out of the garage and parked out of sight on North Wyatt Lane. A gray Toyota Highlander then pulled into the garage, Hunter walked into the garage from across the street, and the garage door closed. The Toyota Highlander exited the garage at approximately 3:20 p.m. and agents followed the vehicle. Upon the gray Toyota Highlander stopping at a gas station, agents were able to identify the driver as Jesus Guzman-Vazquez and the passenger as Cabada-Lopez.

The next day, on January 25, 2013, a series of calls between Hunter and defendant Woodson indicated that Hunter and Woodson would meet at "the Star" and conduct a transaction in which defendant Woodson would purchase approximately one hundred pounds of marijuana from Hunter.[1] At 2:05 p.m. the agents observed Hunter load two duffel bags in the front seat of his Chevrolet Avalanche and one bag into his Chevrolet Malibu. Hunter left his residence driving the Avalanche and co-defendant Maneka Germany followed in the Malibu. Surveilling agents followed Hunter and Germany from Hunter's residence in Columbia, Missouri, to the Ameristar Casino in St. Charles, Missouri. At approximately 3:57 p.m., officers witnessed Hunter's arrival at the Ameristar Hotel and Casino in St. Charles, Missouri. Both Hunter and Germany parked their cars on the fourth level of a parking structure. At approximately 4:36 p.m. agents surveilling the two vehicles then observed Hunter and defendant Woodson unload the two duffel bags from the Avalanche and place them into a white Chevrolet Suburban with Illinois registration. The Suburban, driven by defendant Woodson, then left the casino. Agents followed the Suburban as it took the ramp onto Eastbound I-70 from 5th Street and then exited onto I-270 North. At approximately 4:52 p.m., officers with the St. Louis County Police Department, working in conjunction with DEA agents, initiated a traffic stop at the request of the DEA agents. The DEA agents advised that the officer should stop the vehicle for a traffic violation, if

---

[1] The transcripts of these phone calls were admitted into evidence at the September 27, 2016 suppression hearing on this motion as Government's Exhibit 1.

possible, and that the stop should appear routine, because they wished to maintain the integrity of the wire and electronic interception on Hunter's telephone.  Officers with the St. Louis County Police Department determined that the Suburban was travelling at 72 miles per hour, in an area where the posted speed limit was 60 miles per hour.  The Suburban was stopped for exceeding the posted speed limit.  Officers made contact with the defendant and requested his driver's license and proof of insurance.  At the time, Officers noticed that the defendant appeared to be nervous and his voice was shaking.  Upon entering Defendant's name in the Law Enforcement Database, Officers discovered that the defendant was on probation for possession of controlled substances.  The Officers requested consent to search the vehicle, but the defendant declined to give such consent.

An Officer with the St. John Police Department responded to the scene of the traffic stop with his drug canine, and the canine alerted to the rear cargo area of the Suburban.  The vehicle was subsequently searched and approximately 108 pounds of marijuana was discovered in two large duffel bags.  The defendant was taken into custody and agents from the DEA responded to the location and took custody of the marijuana.

## Analysis

Defendant, in his motion to suppress evidence and statements, argues that the traffic stop was a pretextual stop, the detention of the defendant, and the search of his vehicle violated his rights under the Fourth Amendment to the United States Constitution.  Defendant alleges that because the stop and the subsequent search were unlawful, all evidence seized as a result must be suppressed.  Further, Defendant claims that he was not advised of his rights under Miranda, while he was detained, and that any statements obtained from him while he was in custody were obtained in violation of his right to be free from self-incrimination guaranteed to him under the Fifth Amendment of the United States Constitution. Miranda v. Arizona, 384 U.S. 436 (1966). The Government has responded in opposition, alleging that the traffic stop was lawful, and that there existed probable cause, sufficient to search the vehicle without a warrant, and therefore suppression of the evidence discovered is not warranted because it was lawfully obtained. Additionally, the Government states that they are not aware of any questioning of the defendant beyond the questioning incident to the traffic stop, and have no incriminating statements that they seek to admit at trial against the defendant.  The Court will address these arguments in turn.

3

## A. Traffic Stop

A lawful traffic stop must be based on reasonable suspicion of criminal activity. United States v. Coleman, 603 F.3d 496, 499 (8th Cir. 2010); Terry v. Ohio, 392 U.S. 1, 25-31 (1968). A stop based on reasonable suspicion must be supported by specific and articulable facts, also known as "particularized objective bases." United States v. Arvizu, 534 U.S. 266, 273 (2002). When determining whether there is a particularized objective bases, a totality of the circumstances analysis is used, which allows the officers to draw on their own experience and training. Id.

In the instant case, the officers from the St. Louis County Police Department possessed reasonable suspicion to justify the traffic stop. At the suppression hearing on September 27, 2016, the Officer who initiated the traffic stop testified that the Suburban, driven by Defendant, was traveling at 72 miles per hour, in a zone where the maximum speed limit is 60 miles per hour. It is settled law that any traffic violation provides an officer with probable cause to stop the driver of the vehicle. United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001). Additionally, when a traffic stop is supported by probable cause, it "is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). Therefore, this violation of the speed limit provided the officer with a lawful basis to stop the defendant's vehicle.

Further, the Officer who conducted the traffic stop testified at the September 27, 2016 suppression hearing that he had been in contact with the surveilling agents who had asked him to conduct the traffic stop. He testified that he asked about stopping the vehicle if there was not a traffic violation and he was told that they had probable cause to stop the vehicle. The surveilling agents had observed Hunter place two duffel bags into his Avalanche, they followed that vehicle to the Ameristar Hotel and Casino in St. Charles, Missouri, and they had information based on the interception of Hunter's telephone that there was going to be a drug transaction occur. Surveilling agents then witnessed Hunter and the defendant remove the two duffel bags from the Avalanche and place them into the Suburban in a parking structure at the Ameristar Hotel and Casino. The agents then followed the Suburban and asked for the St. Louis County Police Department to conduct a traffic stop. This Court is satisfied that such conduct provided the surveilling agents with sufficient evidence to conduct a traffic stop on the vehicle. Further, the St. Louis County Police Officers were entitled to rely on the information possessed by other

investigators during this investigation, because they were working in conjunction, and were in communication, with the DEA agents. See United States v. Morales, 238 F.3d 952, 954 (8th Cir. 2001). Therefore, the Court finds that the traffic stop was lawfully conducted, and suppression of the subsequently discovered evidence, based on an argument that the stop was unconstitutional, is without merit.

### B.  Detention of Defendant and Search of the Vehicle

Defendant next contends that the detention of himself and the search of his vehicle were in violation of his Fourth Amendment rights. The Fourth Amendment to the United States Constitution provides that people are to be free from unreasonable searches and seizures absent probable cause. U.S. CONST. amend. IV.

Here, during the stop of the defendant's vehicle, the officer requested consent to search the vehicle, which Defendant declined to provide. The officer noticed that Defendant appeared to be very nervous; his voice was shaking and that while it was January, and far from warm, the defendant began sweating from his forehead. This only increased the officer's suspicions regarding the defendant. See e.g., United States v. Lebrun, 261 F.3d 731, 734 (8th Cir. 2001).

Following these observations, coupled with the information that the officer had received from the DEA agents, the officer then asked for a canine officer to respond to the area to conduct a drug sniff of the vehicle. Here, the Court notes that the officers had reasonable suspicion that the defendant was in possession of marijuana, which is sufficient to continue the traffic stop to conduct a canine sniff. See Rodriguez v. United States, 135 S.Ct. 1609 (2015) (Police may not extend an otherwise completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff). Therefore, in so far as the defendant is arguing that he was unlawfully detained while waiting for the canine officer, this argument is meritless and should be denied.

A St. John Police Department Canine Officer subsequently responded to the location. At the September 27, 2016 suppression hearing, the Canine Officer testified that his dog positively alerted to the door seams and rear hatch of the Suburban. Following the Canine Officer indicating that his dog had positively alerted to the vehicle, the Suburban was searched and two duffel bags containing marijuana were recovered. At the September 27, 2016 suppression hearing, the St. Louis County Police Officer who initiated the stop of the defendant's vehicle testified that while the dog conducted the narcotics sniff of the vehicle, he, another officer and the defendant were located at the right rear quarter panel of his police vehicle. Following the

5

recovery of what was later determined to be marijuana, the officer testified that the defendant was placed in handcuffs and removed from the scene by another officer. Therefore, as to the defendant's argument that he was arrested prior to the recovery of marijuana and without probable cause, the Court finds this argument to be without merit and should be denied.

Moreover, the Court does not find that the defendant's Fourth Amendment rights were implicated with regard to the search of the vehicle. As has been previously discussed, the St. Louis County Police Officer who initiated the traffic stop had been working in conjunction with the surveilling agents from the DEA. The DEA agents, based on the intercepted communications from Hunter's telephone, the communications between Hunter and the defendant, and their surveilling of Hunter from his residence in Columbia, Missouri to the interactions with the defendant in the parking structure at the Ameristar Hotel and Casino, had probable cause to believe that the defendant was in possession of marijuana. Further, there is established precedent that "the use of a well-trained narcotics-detection dog – one that 'does not expose noncontraband items that otherwise would remain hidden from public view' – during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005) (quoting United States v. Place, 462 U.S. 696, 707 (1983)). The positive alert by the trained narcotics detection dog also gave the officer's the probable cause required to search the vehicle. See e.g., United States v. Yang, 345 F.3d 650, 656 (8th Cir. 2003) ("When the dog alerted on Yang's vehicle, the troopers had probable cause to search the vehicle without a warrant."). Therefore, the Court finds that, based on the DEA surveillance, the intercepted communications from Hunter's telephone, and the positive alert by the trained narcotics dog, there was probable cause to search the defendant's vehicle. Consequently, the claim that the resulting evidence should be suppressed is without merit.

### C. Statements

The defendant's final contention is that he was never afforded Miranda warnings, and therefore any statements attributable to him during the custodial interrogation should be suppressed and excluded from evidence at trial. The Government, in their suggestions in opposition to the motion to suppress, states that they are not aware that the defendant was questioned beyond questioning incident to the traffic stop and have no incriminating statements that they seek to introduce as evidence at trial. Therefore, based on the Government's indication that they are not aware of any incriminating statements and have no such statements that they

seek to introduce at trial, the Court finds that the the motion to suppress statements is meritless, and should be denied as moot.

## Conclusion

For the reasons stated above, the Court concludes that Defendant's contentions regarding suppression of evidence in this case to be without merit, and his motion to suppress should be denied. (Doc. 390). In this case the traffic stop was initiated based on, at a minimum, reasonable suspicion. The officer further possessed reasonable suspicion sufficient to conduct a canine sniff of the vehicle. Finally, based on the intercepted communications from Hunter's telephone, the evidence obtained from the surveilling DEA agents and the positive alert by the trained narcotics dog, there was probable cause to search the vehicle. Therefore, the evidence that was discovered subsequently was lawfully obtained. Additionally, based on the Government's own statement that they are not aware of any incriminating statements and have no such statements that they seek to introduce at trial the motion to suppress statements is moot and should be denied.

IT IS THEREFORE RECOMMENDED that Defendant's motion to suppress evidence and statements should be DENIED. (Doc. 390).

Counsel are advised that due to the Court's willingness to accept this motion extremely out of time, the age of the case, and the short time period before the case is set for trial, the defendant will have up to and including October 12, 2016 in which to file and serve objections to this Report and Recommendations. The Government will then be afforded up to and including October 17, 2016 in which to file and serve a response to the defendant's objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 7th day of October, 2016, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge